S. Martin Keleti (State Bar # 144208)
Keleti Law
9903 Santa Monica Boulevard, Suite 751
Beverly Hills, CA 90212-1671
Telephone:   323.308.8489
Facsimile:   323.978.7422
E-mail:       s.martin.keleti@gmail.com
*Attorney for defendants Stephen Riley, Scott
Griffin, Kelly Nickels, Kurt Frolich, Eric
Baker, Daniel Sullivan Bigg, Hardcore, Inc.,
Epic Rights, LLC, New Breed, LLC, Bigg
Time Entertainment, Inc., Golden Robot
Global Entertainment Pty Ltd, and Stephen
Riley And Traci Guns Partnership*

Robert S. Gutierrez (State Bar # 143223)
Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909
Telephone:   424.204.4370
Facsimile:   424.204.4350
E-mail:       gutierrezr@ballardspahr.com
*Attorneys for defendant Epic Rights, LLC*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACII GUNS, an individual; *et al.*,<br><br>　　　　Plaintiffs,<br><br>　　　　*v.*<br><br>STEPHEN RILEY, an individual; *et al.*,<br><br>　　　　Defendants. | Case No. 2:20-cv-00270-CJC (AFMx)<br><br>**NOTICE OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT;**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Fed. R. Civ. P. 12(b)(6)]<br><br>Date:　　　April 27, 2020<br>Time:　　　1:30 p.m.<br>Courtroom: 7C<br>　　　　350 West First Street<br>　　　　Los Angeles, CA 90012 |

## NOTICE OF MOTION

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

　　PLEASE TAKE NOTICE that on Monday, April 27, 2020, at 1:30 p.m., or

as soon thereafter as the matter may be heard in the courtroom of the Hon. Cormac J. Carney (Courtroom 7C) of the above-entitled Court, located at 350 West First Street, Los Angeles, California, defendants Stephen Riley, Scott Griffin, Kelly Nickels, Kurt Frolich, Eric Baker, Daniel Sullivan Bigg, Hardcore, Inc., Epic Rights, LLC, New Breed, LLC, Bigg Time Entertainment, Inc., Golden Robot Global Entertainment Pty Ltd, and Stephen Riley And Traci Guns Partnership—collectively, "Defendants"—will move to dismiss the first amended complaint ("FAC") of plaintiffs Tracii Guns and Philip Lewis (collectively, "Plaintiffs"), either in its entirety, or in the alternative, one or more of the claims for relief, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that the first amended complaint fails, or at least one of its claims for relief, fails to allege sufficient facts to state a claim for relief.

Defendants' motion will be based on this Notice, the attached Memorandum of Points and Authorities, the accompanying combined Request for Judicial Notice ("RFJN") and Declaration of S. Martin Keleti ("Keleti Decl."), the accompanying Proposed Order, and whatever additional arguments and evidence counsel will present at the hearing of this matter. The motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on February 26, 2020, and March 18, 2020. Keleti Decl. ¶¶ 2 & 3.

KELETI LAW

Dated:  March 27, 2020

_/s/ S. Martin Keleti_
By:  S. MARTIN KELETI
Attorney for defendants Stephen Riley, Scott Griffin, Kelly Nickels, Kurt Frolich, Eric Baker, Daniel Sullivan Bigg, Hardcore, Inc., Epic Rights, LLC, New Breed, LLC, Bigg Time Entertainment, Inc., Golden Robot Global Entertainment Pty Ltd, and Stephen Riley And Traci Guns Partnership

BALLARD SPAHR LLP

Dated:  March 27, 2020

_/s/ Robert S. Gutierrez_
By:  Robert S. Gutierrez
Attorney for defendant Epic Rights, LLC

Motion to Dismiss First Amended Complaint

2

## TABLE OF CONTENTS

I.   INTRODUCTION ...............................................................................8

    A.   FACTUAL BACKGROUND ...................................................8

    B.   PROCEDURAL HISTORY ..................................................10

II.  APPLICABLE PROCEDURAL LAW.......................................10

    A.   A MOTION TO DISMISS TESTS THE LEGAL SUFFICIENCY OF THE COMPLAINT. ................................................................10

    B.   THE COURT MAY TAKE JUDICIAL NOTICE OF CERTAIN FACTS. ..................................................................................12

    C.   THE STANDARD FOR LEGAL SUFFICIENCY IS PLAUSIBILITY. ...................................................................12

III. ARGUMENT....................................................................................13

    A.   THE COURT SHOULD DISMISS THE ENTIRE ACTION FOR FAILURE TO STATE ANY CLAIM FOR RELIEF ON THE BASIS OF LACHES. .............................................................13

        1.   Laches Is a Basis for Granting a Motion to Dismiss............14

        2.   The Publication of the Mark in the Registration Process Gave Guns Notice of Riley's Claim to the Mark. ...............16

        3.   The Cancellation Proceeding against the Mark Gave Guns Notice of Riley's Claim to the Mark.....................................17

    B.   THE COURT SHOULD DISMISS THE EIGHTH CLAIM FOR RELIEF FOR CONVERSION FOR FAILURE TO STATE FACTS WHICH CONSTITUTE A RECOGNIZED CLAIM......17

**C.    THE COURT SHOULD DISMISS THE ENTIRE FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND BECAUSE THE ONLY CLAIM PLAINTIFFS CONCEIVABLY COULD AMEND THEIR COMPLAINT TO STATE WOULD ONLY BE AGAINST RILEY, FOR WHICH THE COURT WOULD NOT HAVE SUBJECT MATTER JURISDICTION.**...18

**IV.   CONCLUSION** .............................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Applied Equipment Corp. v. Litton Saudi Arabia, Ltd.*, 7 Cal. 4th 503 (1994).......17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................ 12, 14

*Atieh v. Riordan*, 727 F.3d 73 (1st Cir. 2013) ........................................13

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)................................ 10, 12, 14

*Burlesci v. Petersen*, 68 Cal. App. 4th 1062 (1998) ........................17

*Caswell v. Hazard*, 121 N.Y. 484 (1890) ..........................................18

*Cleveland Stone Co. v. Wallace*, 52 F. 431 (C.C.D. Mich. 1892) ..........................19

*Cornaby's LLC v. Carnet, LLC*, 2017 WL 3503669 (D. Utah 2017).....................18

*Costello v. United States*, 365 U.S. 265 (1961) ..........................................13

*Coto Settlement v. Eisenberg*, 593 F.3d 1031 (9th Cir. 2010).............................11

*Derminer v. Kramer*, 406 F. Supp. 2d 756 (E.D. Mich. 2005)................................18

*Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016) .........................................12

*Fischer v. Machado*, 50 Cal. App. 4th 1069 (1996) ......................................17

*Foley v. Interactive Data Corp.*, 47 Cal. 3d 654 (1988)........................................17

*Global Network Communications, Inc. v. City of New York*, 458 F.3d 150 (2nd Cir. 2006)..........................................................................11

*Haley v. City of Boston*, 657 F.3d 39 (1st Cir. 2011) .............................................11

*Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203 (9th Cir. 2007) .....11

*Intri-Plex Technologies, Inc. v. Crest Group, Inc.*, 499 F.3d 1048 (9th Cir. 2007) 11

*Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014) .............................................12

*Kingsmen v. K-Tel International, Ltd.*, 557 F. Supp. 178 (S.D.N.Y. 1983)............19

*Kristin Marie Conolty dba Fairway Fox Golf v. Conolty Oconnor NYC LLC*, 111 U.S.P.Q.2d 1302 (T.T.A.B. 2014)........................................................................9

*Levin v. Miller*, 763 F.3d 667 (7th Cir. 2014).........................................................12

*Marshak v. Treadwell*, 240 F.3d 184 (3d Cir. 2001) ................................................19

*New York & R. Cement Co. v. Coplay Cement Co.*, 45 F. 212 (C.C.D. Pa. 1891)..19

*Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283 (3rd Cir. 2012)..........................................................12

*Oklahoma Beverage Co. v. Dr. Pepper Love Bottling Co.*, 565 F.2d 629 (10th Cir. 1977)..................................................................................................................18

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384 (2007)..................................................................................17

*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Retirement Plan v. Morgan Stanley Investment Mgmt. Inc.*, 712 F.3d 705 (2nd Cir. 2013)..13

*Piccari v. GTLO Productions, LLC*, 2015 WL 3885023 (E.D. Pa. 2015)..............19

*Pinkette Clothing v. Cosmetic Warriors*, 894 F.3d 1015 (9th Cir. 2018)...............14

*Pit River Tribe v. Bureau of Land Mgmt.*, 793 F.3d 1147 (9th Cir. 2015).............14

*Registration Educ. Project v. Shelley*, 344 F.3d 914 (9th Cir. 2003).....................14

*Rodriguez v. Pierce Cty.*, 267 Fed. Appx. 556 (9th Cir. 2008) ...............................14

*Romans v. Incline Vill. Gen. Imp. Dist.*, 482 Fed. Appx. 292 (9th Cir. 2012..........14

*SEC v. Cross Fin'l Services, Inc.*, 908 F. Supp. 718 (C.D. Cal. 1995) ...................10

*Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005 (9th Cir. 2012)...................11

*Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal. App. 4th 47 (1996)..................................................................................................................17

*Somers v. Apple, Inc.*, 729 F.3d 953 (9th Cir. 2013) ...............................................13

*Strom v. United States*, 641 F.3d 1051 (9th Cir. 2011) ...........................................10

*U.S. ex rel. Cafasso v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th Cir. 2011)..................................................................................................................14

*Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954 (9th Cir. 2010)..................................................................................................................11

*Vu v. California Commerce Club, Inc.*, 58 Cal. App. 4th 229 (1997)....................17

**Statutes**

15 U.S.C. § 1062 ...................................................................................................15

15 U.S.C. § 1063 ......................................................................................15

15 U.S.C. § 1064 ......................................................................................15

15 U.S.C. § 1065 ......................................................................................15

15 U.S.C. § 1125 ......................................................................................15

28 U.S.C. § 1332 ......................................................................................20

28 U.S.C. § 1361 ......................................................................................16

28 U.S.C. § 1367 ......................................................................................20

Cal. Bus. & Prof. Code § 17200 ..............................................................15

Cal. Civ. Code § 3344 ..............................................................................15

**Rules**

Fed. R. Civ. P. 12(b)(6) .............................................. 10, 11, 14, 19

Fed. R. Civ. P. 12(c) .................................................................................14

Fed. R. Civ. P. 12(d) ................................................................................10

Fed. R. Civ. P. 56 .....................................................................................10

Fed. R. Civ. P. 8(a)(2) ..............................................................................12

Fed. R. Evid. 201 ........................................................... 11, 12

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

### A.   FACTUAL BACKGROUND

In 1983, plaintiff Tracii Guns (né Tracy Richard Irving Ulrich) ("Guns") formed a hard rock band called L.A. Guns. FAC ¶ 18. The first incarnation of the group merged with fellow Los Angeles group, Hollywood Rose, to form Guns N' Roses in 1985. FAC ¶ 22. After only a brief tenure in that band, Guns reformed L.A. Guns with a new lineup, consisting of Paul Black, Mick Cripps, Robert Stoddard, and Nickey Alexander. FAC ¶ 23. Black would soon be replaced by singer Phil Lewis (also a plaintiff in this action, and formerly of the group Girl), while bassist Kelly Nickels (formerly of the group Faster Pussycat) was added to the group. FAC ¶¶ 24 & 25. Later, Alexander would be replaced by drummer Steve Riley (one of the defendants in this action, and formerly of the group W.A.S.P.) ("Riley"). FAC ¶ 26.

Aficionados of the genre would come to call this the "classic lineup" of L.A. Guns, but it changed over time, with Riley being the most consistent member. They achieved moderate chart success in the late 1980s and early 1990s. FAC ¶¶ 25, 27 & 28. Plaintiffs allege that Riley was fired in 1992. FAC ¶ 29. The "classic lineup" of the group would reunite sometime between 1996 and 1999 and began recording new material, with Riley again in the band. FAC ¶ 32 & 33. However, the group continued to change lineups and Guns eventually left to form the hard rock group Brides of Destruction with Nikki Sixx of Mötley Crüe in 2002.

Meanwhile, L.A. Guns, including Riley, continued without Guns. Following his decision to put Brides of Destruction on hiatus in 2006, Guns formed The Tracii Guns Band, which included former L.A. Guns members Black and Alexander, and its lineup also evolved. Guns eventually changed his post-Brides of Destruction band name from The Tracii Guns Band to L.A. Guns. Both groups

continued to record and tour under the L.A. Guns moniker until 2012, when the Tracii Guns-led version of the group disbanded.

On March 30, 1998, Riley applied to register the band name as a service mark in the United States Patent and Trademark Office ("USPTO"), in his own name as well as that of Guns, identifying the date of first use as some time in 1987. The registration issued on October 19, 1999. The USPTO recognized Riley and Guns as co-owners of the mark, calling them collectively "The Stephen Riley And Tracy Guns Partnership." Riley and Guns performed together, and entered into recording and merchandising deals together. Riley registered the mark jointly with Guns because if a mark is owned by joint owners, an application to register the mark by only one owner is void because not filed by the "owner." *Kristin Marie Conolty dba Fairway Fox Golf v. Conolty Oconnor NYC LLC*, 111 U.S.P.Q.2d 1302 (T.T.A.B. 2014) (corporate applicant was not the owner of the mark because the founders were joint owners of the mark).

In 2002, when Riley and Guns separated, there was no written partnership agreement, and in the absence of any, Riley (and later Guns) continued to use the band name L.A. Guns, with Lewis in Riley's lineup for a time. The two bands coexisted peacefully for years, until only Riley's was active. Even Guns alleges that for approximately 10 years (from 2006 to 2016), there were two bands touring with the same name. FAC ¶ 52.

Riley took steps to maintain the registration of the mark in his own name and that of Guns, such as filing an affidavit between the fifth and sixth anniversaries of registration to make the registration incontestable, and renewing the mark for additional 10-year terms. Keleti Decl. ¶ 4 & RFJN Exh. A.

In 2008, however, through an entity called LA Guns International LLC (a Texas limited liability company, since forfeited Keleti Decl. ¶ 8 & RFJN Exh. E), Guns instituted a cancellation proceeding in the USPTO's Trademark Trial and Appeal Board ("TTAB"). Keleti Decl. ¶ 6 & RFJN Exh. C. On August 23, 2010,

the TTAB dismissed the cancellation proceeding *with prejudice*. Keleti Decl. ¶ 7 & RFJN Exh. D.

### B.    PROCEDURAL HISTORY

Plaintiffs commenced this action by filing their original complaint on January 9, 2020 (why Philip Lewis is a plaintiff, when he has come and gone several times, FAC ¶¶ 24, 31, 33 & 53, remains a mystery to Defendants, but misjoinder of parties is not grounds to dismiss under a Rule 21 of the Federal Rules of Civil Procedure). After counsel for Plaintiffs and counsel for Defendants met in person on February 26, 2020, pursuant to Local Rule 7-3, to discuss motions to dismiss and to strike which Defendants contemplated filing to attack all or part of Plaintiffs' pleading, Plaintiffs filed their first amended complaint, taking advantage of the opportunity to amend their pleading once as of right, pursuant to Fed. R. Civ. P. 15(a). Keleti Decl. ¶ 2. While the first amended complaint does address some of Defendants' concerns and did narrow the scope of the disputes, many remain, hence the filing of the instant motion. *Id.* ¶ 3. Counsel for both sides talked again on March 18, 2020—this time by telephone, as in the meantime, the COVID-19 public health emergency had erupted. *Id.*

## II.    APPLICABLE PROCEDURAL LAW

### A.    A MOTION TO DISMISS TESTS THE LEGAL SUFFICIENCY OF THE COMPLAINT.

A motion to dismiss pursuant to Rule 12(b)(6) is similar to the common law general demurrer—i.e., it tests the legal sufficiency of the claim or claims stated in the complaint. *Strom v. United States*, 641 F.3d 1051, 1067 (9th Cir. 2011); *SEC v. Cross Fin'l Services, Inc.*, 908 F. Supp. 718, 726-27 (C.D. Cal. 1995). For purposes of Rule 12(b)(6), "claim" means a set of facts that, if established, entitle the pleader to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

If a Rule 12(b)(6) motion presents matters outside the pleadings, and such evidence is considered by the court, "the motion must be treated as one for

summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *Williams v. County of Alameda*, 26 F. Supp. 3d 925, 936 (N.D. Cal. 2014).

If the motion to dismiss becomes a motion for summary judgment, the standard changes from determining whether a claim for relief has been *stated* (Rule 12(b)(6)) to determining whether there is a "*genuine dispute as to any material fact* and the movant is entitled to judgment as a matter of law*" (Rule 56(a) (emphasis added)). *Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 154-55 (2nd Cir. 2006); *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1207 (9th Cir. 2007).

Nevertheless, certain matters outside the complaint are deemed part thereof for purposes of a 12(b)(6) motion, including matters as to which the court may take judicial notice. These matters may be shown by a 12(b)(6) motion *without* thereby converting it to a summary judgment motion. A matter that is properly the subject of judicial notice may be considered along with the complaint when deciding a motion to dismiss for failure to state a claim. *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016, fn. 9 (9th Cir. 2012). For purposes of a Rule 12(b)(6) motion, a court can augment the facts and inferences from the body of the pleading with "data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011).

A court need not accept as true allegations that contradict facts which may be judicially noticed by the Court. *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010). This is an exception to the general rule that a court must accept as true all material factual allegations in the complaint. For example, a court may properly consider matters of public record

(e.g., pleadings, orders and other papers on file in another action pending in the court) as long as the facts noticed are not subject to reasonable dispute. *Intri-Plex Technologies, Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

## B.   THE COURT MAY TAKE JUDICIAL NOTICE OF CERTAIN FACTS.

While court and government records are frequently the subject of judicial notice, judicial notice is not limited to such items. Federal Rule of Evidence 201 states: "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Rule 201 goes on to state that upon the request of a party, "a court must take judicial notice of a fact as long as the party provides the court with the necessary showing that the fact is not subject to reasonable dispute." One type of document of which Defendants respectfully request the Court take judicial notice are records of the United States Patent and Trademark Office ("USPTO"), such as Riley's application to register the mark at issue, and the records of the related cancellation proceeding.

## C.   THE STANDARD FOR LEGAL SUFFICIENCY IS PLAUSIBILITY.

In addition to providing "fair notice" of the claim, a pleading's factual allegations must show "that the pleader is *entitled to relief*." Fed. R. Civ. P. 8(a)(2) (emphasis added)). To do so, the pleading must allege "enough facts to state a claim to relief that is *plausible* on its face." *Twombly*, *supra*, 550 U.S. at 570 (emphasis added)

To determine whether a pleading adequately states a plausible claim for relief, a court must first take "note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009); *Ebner v. Fresh, Inc.*, 838 F.3d 958, 962, 963 (9th Cir. 2016). *Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014)

(per curiam) (*Twombly* and *Iqbal* require that plaintiff "plead facts sufficient to show that her claim has substantive plausibility"). This standard requires that a party "demonstrate the plausibility, as opposed to *conceivability*, of its causes of action in the complaint." *Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 303 (3rd Cir. 2012) (emphasis added); *Levin v. Miller*, 763 F.3d 667, 671 (7th Cir. 2014) (stating that Supreme Court in *Twombly*/*Iqbal* "wrote that judges may bypass implausible allegations and insist that complaints contain enough detail to allow courts to separate fantasy from claims worth litigating").

The purpose of the plausibility requirement is "to prevent settlement extortion—using discovery to impose asymmetric costs on defendants in order to force a settlement advantageous to the plaintiff regardless of the merits of his suit." *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Retirement Plan v. Morgan Stanley Investment Mgmt. Inc.*, 712 F.3d 705, 719 (2nd Cir. 2013); *Atieh v. Riordan*, 727 F.3d 73, 76 (1st Cir. 2013) ("The plausibility standard is a screening mechanism designed to weed out cases that do not warrant either discovery or trial"); *Somers v. Apple, Inc.*, 729 F.3d 953, 966 (9th Cir. 2013) ("specificity of facts is warranted before permitting a case to proceed into costly and protracted discovery").

## III.   ARGUMENT

### A.   THE COURT SHOULD DISMISS THE ENTIRE ACTION FOR FAILURE TO STATE ANY CLAIM FOR RELIEF ON THE BASIS OF LACHES.

Although Guns founded the original L.A. Guns, and later a second band with that name, he did not use the mark systematically and consistently. Since first affiliating with the band, however, Riley has. More importantly, Riley registered the mark (in his own name as well as that of Guns), and successfully defended a challenge in the form of a cancellation proceeding. Guns was on the sidelines,

either with another band using the name L.A. Guns, or involved in other projects. Guns accuses Riley of impropriety in alleging the date of first use as 1987, FAC ¶ 39, and certainly that was when Riley and Guns began using the mark *together*, which is appropriate in that Riley registered the mark with both himself and Guns as the owner; as even Guns himself admits, the original L.A. Guns band merged with the band Hollywood Rose to form Guns N' Roses in 1985, FAC ¶ 22, and re-formed the band L.A. Guns in 1985, so 1983 could never accurately be the date of first use when that was a different band, which Guns abandoned to become part of Guns N' Roses.

For Guns to "crawl out of the woodwork" (figuratively speaking) at this late implicates the equitable doctrine of laches, which bars stale claims in a manner similar to a statute of limitations. Guns had earlier opportunities to assert his claim to the mark, but slept on whatever rights he may have had.

### 1.    Laches Is a Basis for Granting a Motion to Dismiss.

Laches is an equitable defense that prevents a party, who with full knowledge of the facts, acquiesces in a transaction and sleeps upon his rights. *Costello v. United States*, 365 U.S. 265, 283 (1961) defined laches as a defense which "requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." In *Pinkette Clothing v. Cosmetic Warriors*, 894 F.3d 1015 (9th Cir. 2018), the Ninth Circuit confirmed that laches remains a proper defense in actions filed under the Lanham Act.

The affirmative defense can be asserted on a motion to dismiss or motion for judgment on the pleadings;[1] it does not have to wait until a motion for summary

---

[1]    "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The same legal standard applies to motions under Rule 12(b)(6) and 12(c), and much of the process described by the Supreme Court in *Ashcroft v. Iqbal*, *supra*, and *Bell Atlantic Corp. v. Twombly*, *supra*. The Ninth Circuit describes the legal standards under these motions as "substantially identical." *Pit River Tribe v. Bureau of Land Mgmt.*, 793 F.3d 1147, 1155 (9th Cir. 2015); *U.S. ex rel. Cafasso v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011).

judgment or trial. Indeed, a trial court can bring up the affirmative defense of laches *sua sponte*. The Ninth Circuit has implicitly recognized a court's ability to raise the doctrine of laches *sua sponte* before trial. See *Southwest Voter Registration Educ. Project v. Shelley*, 344 F.3d 914 (9th Cir. 2003) (en banc) (affirming district court's decision, relying in part on court's *sua sponte* invocation of laches, to deny preliminary injunction); see also *Romans v. Incline Vill. Gen. Imp. Dist.*, 482 Fed. Appx. 292, 293 (9th Cir. 2012); *Rodriguez v. Pierce Cty.*, 267 Fed. Appx. 556 (9th Cir. 2008).

"[W]hen the defense of laches is clear on the face of the complaint, and where it is clear that the plaintiff can prove no set of facts to avoid the insuperable bar, a court may consider the defense on a motion to dismiss." *Lennon* 63 F. Supp. 2d at 439. In the same way that a court may consider certain matter outside the pleadings (e.g., facts which are subject to judicial notice) in considering whether to grant a motion to dismiss for failure to state a claim generally, a court may look to such matter beyond the four corners of the pleading when determining whether the equitable doctrine of laches bars a plaintiff's claims. The reasoning is the same: while motions to dismiss for failure to state a claim for relief do not resolve factual disputes, certain facts are so far removed from any dispute that a court may consider them as well.

Accordingly, the doctrine of laches bars all of Plaintiffs' claims—for declaratory relief, unfair competition, trademark infringement and false advertising under the Lanham Act (15 U.S.C. § 1125), unfair competition under California common law and California Business & Professions Code § 17200, unauthorized use of likeness under California common law and California Civil Code § 3344, breach of contract, and conversion.

### 2.    The Publication of the Mark in the Registration Process Gave Guns Notice of Riley's Claim to the Mark.

As part of the process in registering a mark with the USPTO, after an application is reviewed by an examiner to determine registrability of the mark, it is published in the Official Gazette of the Patent and Trademark Office. 15 U.S.C. § 1062(a). This gives the opportunity for any interested party to see that a claim has been asserted in the mark before registration issues, and any affected parties can commence opposition proceedings in the TTAB. 15 U.S.C. § 1063(a). Unless an application is successfully opposed, the mark proceeds to registration. 15 U.S.C. § 1063(b). Within five years of registration, an affected party can petition for cancellation of the registration. 15 U.S.C. § 1064. With certain exceptions not applicable in this case, after a mark has been registered and in use for five years, it becomes incontestable, provided the registrant complies with certain formalities. 15 U.S.C. § 1065.

The USPTO published the mark for opposition on July 27, 1999. Keleti Decl. ¶ 4 & RFJN Exh. A. No one came forward to oppose the mark. Riley timely filed the necessary paperwork to maintain the original registration, and he renewed the registration twice. *Id*. The mark is incontestable on numerous grounds. More importantly, for the purpose of this motion to dismiss, Guns was put on notice some ***20 years before he filed this action*** that Riley claimed that he and Guns owned the mark. Guns therefore had notice, and Riley suffered prejudice by relying to his detriment on the registration of the mark as allowing him to perform and record under the band name, as well as to promote the band through selling or licensing merchandise bearing the mark. This alone would be grounds for laches to bar Plaintiffs' entire first amended complaint.

### 3. The Cancellation Proceeding against the Mark Gave Guns Notice of Riley's Claim to the Mark.

For nearly a decade after Riley registered the mark, Guns sat on whatever rights he had, before he attempted to cancel the registration. Keleti Decl. ¶ 7 & RFJN Exh. C. **Ten years ago**, the TTAB dismissed the cancellation proceeding with prejudice. Keleti Decl. ¶ 8 & RFJN Exh. D. Regardless of the extent of the res judicata effect of the dismissal of the cancellation proceeding, one thing is clear: Guns had knowledge of the cancellation proceeding and its dismissal. Although the cancellation proceeding was brought by an entity, not Guns himself personally, his fingerprints are all over it: when LA Guns International LLC was formed on February 12, 2008, Tracy Ulrich (i.e., plaintiff Tracii Guns) was one of the two members of that entity. Keleti Decl. ¶¶ 9 & 10 & RFJN Exhs. E & F. That was ten years ago. Again, Guns had been sleeping on whatever rights he might have had. In the meantime, Riley has acted in reliance on that matter being adjudicated. He and everyone with whom he deals (most notably, his many codefendants) have acted in accordance with the understanding that Riley and Guns are joint owners of the mark, and consequently Riley can exploit the mark without liability.

### B. THE COURT SHOULD DISMISS THE EIGHTH CLAIM FOR RELIEF FOR CONVERSION FOR FAILURE TO STATE FACTS WHICH CONSTITUTE A RECOGNIZED CLAIM.

The eighth claim for relief for conversion falls under the Court's supplemental jurisdiction, 28 U.S.C. § 1361, in that it is a state-law tort claim arising under common law. "Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1066 (1998). The California Supreme Court has held that conduct which amounts to a routine breach of contract cannot give rise to

tort liability. *Applied Equipment Corp. v. Litton Saudi Arabia, Ltd.*, 7 Cal. 4th 503, 517 (1994); see also *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 693 (1988) (the court will not create a tort out of what is merely a breach of contract).

Under California law, " '[m]oney cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum involved, such as where an agent accepts a sum of money to be paid to another and fails to make the payment. A 'generalized claim for money [is] not actionable as conversion.' " *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 395 (2007) (citing, inter alia, *Fischer v. Machado*, 50 Cal. App. 4th 1069, 1072–1074 (1996); *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal. App. 4th 472, 485 (1996); and *Vu v. California Commerce Club, Inc.*, 58 Cal. App. 4th 229, 235 (1997)).

It is clear from Plaintiffs' first amended complaint that the Court should dismiss Plaintiffs' claim for conversion. The money allegedly converted is not a specific identifiable amount, but a more general, amorphous, unliquidated sum. At the very least, the Court should dismiss this claim without leave to amend. The only apparent reason for including a claim for conversion is an improper attempt to seek punitive damages where there is no basis for doing so.where no such claim can properly be made.

**C.    THE COURT SHOULD DISMISS THE ENTIRE FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND BECAUSE THE ONLY CLAIM PLAINTIFFS CONCEIVABLY COULD AMEND THEIR COMPLAINT TO STATE WOULD ONLY BE AGAINST RILEY, FOR WHICH THE COURT WOULD NOT HAVE SUBJECT MATTER JURISDICTION.**

When parties are co-owners of a mark, one party cannot sue the other for infringement; a co-owner cannot infringe the mark it owns. *Derminer v. Kramer*, 406 F. Supp. 2d 756 (E.D. Mich. 2005) ("An owner does not infringe upon his co-

owner's rights in a trademark by exercising his own right of use."); *Puri v. Yogi Bhajan Administrative Trust*, 2015 WL 12684464, *11 (C.D. Cal. 2015) (a co-owner of a mark cannot be an infringer of the mark.)

Co-ownership arises in several circumstances. One of these is dissolution. If a group has disbanded, it is no different than any other partnership. Traditionally, courts have treated a trademark as just another piece of property to be sliced up and apportioned upon dissolution. Thus, in the absence of an agreement to the contrary, no one partner would have the right to prevent another former partner from using the mark. See, e.g., *Caswell v. Hazard*, 121 N.Y. 484, 494 (1890) (each former partner entitled to use the trademark); *Oklahoma Beverage Co. v. Dr. Pepper Love Bottling Co.*, 565 F.2d 629 (10th Cir. 1977) (assuming that partners have equal right to use mark after dissolution, that right must be perfected by continuing use); *Cornaby's LLC v. Carnet, LLC*, 2017 WL 3503669, *8 (D. Utah 2017) (assuming the partners Janet and Carma had joint ownership of the mark after partnership dissolution, Janet's subsequent 10 years of non-use was an abandonment of her rights in the mark). For example, one court stated:

> In holding that it is necessary to the validity of a trademark or tradename that the claimant of it must be entitled to an exclusive right to it, or property in it, we do not mean to say that it may not belong to more than one person, to be enjoyed jointly or severally. Co-partners, upon a dissolution of partnership, may stipulate that each of them may use the trademarks of the firm, but such co-owners will together be entitled to the exclusive use of the trademark and perhaps each of them will be entitled to such exclusive use as to all other persons except their associates in ownership.

*New York & R. Cement Co. v. Coplay Cement Co.*, 45 F. 212, 213 (C.C.D. Pa. 1891); accord *Cleveland Stone Co. v. Wallace*, 52 F. 431 (C.C.D. Mich. 1892).

It does not matter whether or not the group to which Guns and Riley belonged—L.A. Guns—was disbanded. A performing group that disbands does not immediately abandon exclusive rights in its name. For example, a performing group that ceased recording and disbanded in 1967 did not abandon rights in the group name. The continued use of the name to promote the sale of previous recordings and receipt of royalties from those sales negates any inference of intent to abandon. *Kingsmen v. K-Tel International, Ltd.*, 557 F. Supp. 178 (S.D.N.Y. 1983); accord *Marshak v. Treadwell*, 240 F.3d 184 (3d Cir. 2001).

Even if a group member leaves, and the band continues without him, the co-ownership continues. In *Piccari v. GTLO Productions, LLC*, 2015 WL 3885023 (E.D. Pa. 2015). In *Piccari*, the mark of a rock music group was jointly owned by the five members of the group. Plaintiff was terminated as part of the group and sued for not receiving part of the revenue from performances thereafter. The court dismissed plaintiff's trademark infringement case on a Rule 12(b)(6) motion because one co-owner of a mark cannot infringe the mark. The court held that the dispute between these co-owners "is best understood as an action for an accounting that arises under state contract law." The case amounted to a state law claim for an accounting of partnership profits, not a trademark claim. Curiously enough, that is ***not*** one Plaintiffs' eight claims. If that is the crux of Plaintiffs' claim, however, and the Court were to grant them leave to amend, such a claim would only be against Riley, so the Court should dismiss all other defendants. But this Court would have no subject matter jurisdiction for such a state-law claim, in the absence of complete diversity between Plaintiffs and Riley, who are both residents of Los Angeles County, California, FAC ¶¶ 3 & 5. 28 U.S.C. § 1332. Although Plaintiffs invoked the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367, FAC ¶ 1, the Court has discretion under 28 U.S.C. § 1367(c)(3) to decline to exercise

supplemental jurisdiction and dismiss a case when there is no longer any claim arising under federal subject matter jurisdiction. Because the case was only recently filed, the Court should dismiss the entire action.

## IV.    CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' entire first amended complaint, or at least the eighth claim for relief, with prejudice. Publication of the trademark application (for registration in the names of both Guns and Riley) gave Guns notice nearly 20 years ago. After five years, the mark became incontestable. More than 10 years ago, Guns (through his limited liability company) filed a cancellation proceeding, and lost (it was dismissed with prejudice), which meant that Guns knew about Riley's claim. And as Guns himself alleges, for approximately 10 years (from 2006 to 2016), there were two bands touring with the same name. FAC ¶ 52. Riley suffered prejudice as a result of Guns sleeping on his rights.

KELETI LAW

Dated:      March 27, 2020          _/s/ S. Martin Keleti_
                                    By:    S. MARTIN KELETI
                                    Attorney for defendants Stephen Riley, Scott
                                    Griffin, Kelly Nickels, Kurt Frolich, Eric
                                    Baker, Daniel Sullivan Bigg, Hardcore, Inc.,
                                    Epic Rights, LLC, New Breed, LLC, Bigg
                                    Time Entertainment, Inc., Golden Robot
                                    Global Entertainment Pty Ltd, and Stephen
                                    Riley And Traci Guns Partnership

BALLARD SPAHR LLP

Dated:      March 27, 2020          _/s/ Robert S. Gutierrez_
                                    By:    Robert S. Gutierrez
                                    Attorney for defendant Epic Rights, LLC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **ATTESTATION REGARDING SIGNATURES**

Pursuant to Local Civil Rule 5-4.3.4(a)(2)(i), I hereby attest that all parties, on whose behalf this filing is jointly submitted, concur in this filing's content and have authorized its filing.

Dated:        March 27, 2020          _____ /s/ *S. Martin Keleti* _____