Erik J. Foley (Admitted pro hac vice)
EFoley@lrrc.com
LEWIS ROCA ROTHGERBER CHRISTIE LLP
3993 Howard Hughes Pkwy., Suite 600
Las Vegas, NV 89169
Tel: (702) 949-8200
Fax: (702) 949-8398

G. Warren Bleeker, CA Bar No. 210834
WBleeker@lrrc.com
LEWIS ROCA ROTHGERBER CHRISTIE LLP
655 N. Central Avenue, Suite 2300
Glendale, CA 91203
Tel:   626.795.9900
Fax:   626.577.8800

Attorneys for Plaintiffs
*Tracii Guns and Philip Lewis*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACII GUNS, an individual; and PHILIP LEWIS, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>STEPHEN RILEY, an individual; SCOTT GRIFFIN, an individual; KELLY NICKELS, an individual; KURT FROHLICH, an individual; ERIC BAKER, an individual; DANIEL SULLIVAN BIGG, an individual; HARDCORE, INC., a California corporation d/b/a RIVERTON ONE MUSIC; EPIC RIGHTS, LLC, a California Limited Liability Company, previously registered as Epic Rights, Inc., a California corporation; NEW BREED LLC, a California Limited Liability Company; BIGG TIME ENTERTAINMENT, INC., a California corporation; GOLDEN ROBOT GLOBAL ENTERTAINMENT PTY LTD, an Australia proprietary limited company; STEPHEN RILEY AND TRACI [sic] GUNS PARTNERSHIP, a purported entity of unknown form; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:20-cv-00270-CJC (AFMx)<br><br>**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>**Hearing Date:  April 27, 2020**<br>**Time:  1:30 p.m.**<br>**Courtroom:  7C**<br>**First Street Courthouse**<br><br>**Hon. Cormac J. Carney** |

655 North Central Avenue, Suite 2300
Glendale, CA 91203

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ....................................................................................... 1

II. FACTUAL BACKGROUND ...................................................................... 2

III. DISMISSAL IS NOT APPROPRIATE AS TO THE FACTUALLY INTENSIVE DEFENSE OF LACHES, WHICH IS NOT APPLICABLE TO PLAINTIFFS' CLAIMS .................................................. 4

    A. It Is Not Appropriate To Make Factual Determinations As To A Laches Defense On A Motion To Dismiss ............................................. 4

    B. Plaintiff Has Alleged Facts Sufficient to Defeat a 12(b)(6) Motion As To Laches ........................................................................................ 5

    C. A Laches Defense Is Not Available for a Willful Infringer ................. 7

    D. The Affirmative Defense of Laches Does Not Apply to Several of Plaintiffs' Claims ............................................................................. 9

        1. *The Equitable Defense of Laches Is Not Applicable to Plaintiffs' Claims at Law* ........................................................... 9

        2. *Plaintiffs Have Not Delayed in Seeking Relief, as They Allege Recent Events Giving Rise to Their Claims* ................. 10

IV. THE COURT MUST ONLY CONSIDER EVIDENCE APPROPRIATE TO A MOTION TO DISMISS, BECAUSE DEFENDANTS HAVE NOT MET THE REQUIREMENTS TO CONVERT TO A MOTION FOR SUMMARY JUDGMENT ................... 11

    A. To Convert a Motion to Dismiss to a Motion for Summary Judgment, the Moving Party Must Have Complied with the Central District's Procedural Requirements for a Motion for Summary Judgment ........................................................................ 11

    B. Because the Motion Does Not Comply with LR 56-1, the Motion Cannot Be Converted to One for Summary Judgment; Therefore, the Court Must Reject Defendants' Extraneous Facts ...................... 13

V. PLAINTIFFS STATE A VALID CLAIM FOR CONVERSION ............... 16

    A. Defendants Had an Obligation, Independent of Contract, to Refrain from Wrongfully Depriving Plaintiffs of Their Property ...... 16

    B. Defendants Converted "a Specific, Identifiable Sum" of Plaintiffs' Money ............................................................................... 17

655 North Central Avenue, Suite 2300
Glendale, CA 91203

Lewis Roca
ROTHGERBER CHRISTIE

VI.    THE COURT MAY CONTINUE TO EXERCISE SUBJECT MATTER JURISDICTION OVER THIS ACTION .................................... 18

VII.   CONCLUSION ......................................................................................... 19

655 North Central Avenue, Suite 2300
Glendale, CA  91203

Lewis Roca
ROTHGERBER CHRISTIE

# TABLE OF AUTHORITIES

**Cases**                                                                           **Page(s)**

*Aryeh v. Canon Bus. Sols., Inc.*,
  55 Cal. 4th 1185, 292 P.3d 871 (2013)................................................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................5

*Bain v. California Teachers Ass'n*,
  891 F.3d 1206 (9th Cir. 2018)................................................................12

*Bell Atlantic Corp. v. Twombly*,
  550 U.S................................................................12

*Bernhardt v. Cty. of Los Angeles*,
  279 F.3d 862 (9th Cir. 2002)................................................................7

*Biolase, Inc. v. Fotona Proizvodnja Optoelektronskih Naprav D. D.*,
  No. SACV 14-0248................................................................12

*Burlesci v. Petersen*,
  68 Cal. App. 4th 1062, 80 Cal. Rptr. 2d 704 (1998)................................................................16

*Conan Props., Inc. v. Conans Pizza, Inc.*,
  752 F.2d 145 (5th Cir.1985)................................................................8

*Conley v. Gibson*,
  355 U.S. 41 (1957)................................................................12

*Couveau v. Am. Airlines, Inc.*,
  218 F.3d 1078 (9th Cir. 2000)................................................................4, 5

*DC Comics v. Towle*,
  802 F.3d 1012 (9th Cir. 2015)................................................................8

*Edwards v. Marin Park, Inc.*,
  356 F.3d 1058 (9th Cir. 2004)................................................................12

*Erlich v. Menezes*,
  21 Cal. 4th 543, 981 P.2d 978 (1999)................................................................16

655 North Central Avenue, Suite 2300
Glendale, CA  91203

Lewis Roca
ROTHGERBER CHRISTIE

*Evergreen Safety Council v. RSA Network Inc.*,
  697 F.3d 1221 (9th Cir. 2012).........................................................................7

*Forest Ambulatory Surgical Assocs., L.P. v. United Healthcare Ins. Co.*,
  No. CV 12-2916 PSG, 2013 WL 11323600 (C.D. Cal. Mar. 12, 2013).............13

*Gonzales v. Marriott Int'l, Inc.*,
  142 F. Supp. 3d 961 (C.D. Cal. 2015).........................................................12, 13

*Grasshopper House, LLC v. Clean & Sober Media LLC*,
  394 F. Supp. 3d 1073 (C.D. Cal. 2019)........................................................6, 10

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
  304 F.3d 829 (9th Cir. 2002)...........................................................................9

*Kim v. Westmoore Partners, Inc.*,
  201 Cal. App. 4th 267, 133 Cal. Rptr. 3d 774 (2011).......................................17

*Lindy Pen Co. v. Bic Pen Corp.*,
  982 F.2d 1400 (9th Cir. 1993), *abrogated on other grounds by
  SunEarth, Inc. v. Sun Earth Solar Power Co.*,
  839 F.3d 1179 (9th Cir. 2016).........................................................................8

*McBride v. Pentagon Techs. Grp., Inc.*,
  No. C 15-2696 ..................................................................................................5

*Paiute-Shoshone Indians of Bishop Cmty. of Bishop Colony, Cal. v.
  City of Los Angeles*,
  No. 1:06CV00736 ...........................................................................................5

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil &
  Shapiro, LLP*,
  150 Cal. App. 4th 384, 58 Cal. Rptr. 3d 516 (2007).........................................17

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
  572 U.S. 663 (2014).........................................................................................9

*Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*,
  894 F.3d 1015 (9th Cir. 2018)..........................................................................9

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
  No. 14-CV-2061-H (BGS), 2016 WL 7326609 (S.D. Cal. Jan. 12,
  2016), *aff'd*, 875 F.3d 1369 (Fed. Cir. 2017)...................................................5

655 North Central Avenue, Suite 2300
Glendale, CA 91203

LEWIS ROCA
ROTHGERBER CHRISTIE

*Robinson Helicopter Co. v. Dana Corp.*,
    34 Cal. 4th 979, 102 P.3d 268 (2004)..................................................16

*Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*,
    49 Cal. App. 4th 472, 56 Cal. Rptr. 2d 756 (1996)............................18

*Sowa v. Abberley*,
    No. CV 12-2579 PSG, 2012 WL 12887754 (C.D. Cal. Nov. 20,
    2012) ....................................................................................................12

*Speed Corp. v. Webster*,
    262 F.2d 482 (9th Cir. 1959).................................................................5

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
    839 F.3d 1179 (9th Cir. 2016) ..............................................................8

*In re Sweeney*,
    264 B.R. 866 (Bankr. W.D. Ky. 2001)................................................17

*TeleSign Corp. v. Twilio, Inc.*,
    No. CV 15-3240 PSG (SSX), 2015 WL 12662344 (C.D. Cal. Oct.
    9, 2015)..................................................................................................7

*Tortilla Factory, LLC v. Better Booch, LLC*,
    No. 2:18-CV-02980-CAS-SKx, 2018 WL 6179491 (C.D. Cal. Nov.
    26, 2018)............................................................................................4, 5

*UA Local 343 v. Nor-Cal Plumbing, Inc.*,
    48 F.3d 1465 (9th Cir. 1994).................................................................9

*Underwood v. Future Income Payments, LLC*,
    No. SA CV 17-1570 DOC, 2018 WL 4964333 (C.D. Cal. Apr. 26,
    2018) ....................................................................................................10

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003)...............................................................12

*Western Ctr. for Journalism v. Cederquist*,
    235 F.3d 1153 (9th Cir. 2000)...............................................................7

655 North Central Avenue, Suite 2300
Glendale, CA 91203

Lewis Roca
ROTHGERBER CHRISTIE

**Statutes**

15 U.S.C. § 1064(3) ....................................................................................11

Cal. Civ. Code § 3426.6 ................................................................................9

Cal. Civ. Code § 17208 .................................................................................9

Cal. Civ. Proc. Code § 337 .........................................................................10

Cal. Civ. Proc. Code § 338 .........................................................................10

Fed. R. Civ. P. 56 ................................................................................11, 12

Fed R. Civ. P. 12(b)(6) ...............................................................................12

Lanham Act ............................................................................................9, 19

**Other Authorities**

Local Rule 7-6 ...........................................................................................16

Local Rules 56-1 and 56-2 .............................................................11, 12, 13

655 North Central Avenue, Suite 2300
Glendale, CA 91203

Lewis Roca
ROTHGERBER CHRISTIE

## I.    __INTRODUCTION__

Defendants' motion to dismiss lacks merit and should be denied.

First, the defense of laches involves an intensive factual inquiry that is typically not appropriate to decide on a motion for summary judgment, let alone a motion to dismiss.  In addition, willful infringement precludes a laches defense for trademark infringement. Further, a party asserting trademark infringement has no obligation to sue until there is a case of clear infringement which in most cases requires legal action only when defendant's infringing acts significantly impact on plaintiff's good will and business reputation. Plaintiff Guns alleges that he only recently became aware of actual confusion in the marketplace and significant impact on his good will and business reputation.  In addition, there is no evidence of prejudice within the four corners of the Complaint.  Moreover, laches is an equitable claim that cannot apply to Plaintiffs' claims at law (under California law).

Second, Plaintiffs allege facts sufficient to state a claim for conversion. Contrary to Defendants' assertion, Defendant Riley's obligation to refrain from converting royalties belonging to Plaintiffs existed independent of any contract; therefore, the tort action is appropriate.  And, though Plaintiffs do not currently know the specific amount Riley converted, they are nevertheless entitled to a "specific and identifiable" amount that will become known through discovery.  The conversion claim is therefore viable.

Finally, Defendants' claim that a co-trademark owner cannot sue another co-owner is irrelevant.  Plaintiff Guns alleges he is the ***sole*** owner of the common law trademark rights for L.A. GUNS and the design mark, that he used the L.A. GUNS marks in 1983 prior to Riley and therefore has trademark priority over Riley, that there is no such co-ownership, and that the purported partnership that is the listed owner of the federal registration for the design mark does not exist and never existed. Thus, Plaintiff Guns is not suing as a "co-owner" and does not allege that Riley is a "co-owner."  Defendants' argument therefore is not colorable and fails.

Plaintiffs' factual allegations in the Amended Complaint, accepted as true and with all reasonable inferences weighing in favor of Plaintiffs, establish plausible facts for each cause of action asserted.  The Motion should be denied.

## II.    FACTUAL BACKGROUND

In 1983, Plaintiff Tracii Guns ("Guns") formed a rock and roll band, and incorporated his own name into the band's name: "L.A. Guns."  (Compl. ¶ 18, ECF No. 27).  Guns is a legendary guitarist, who, while also famous for founding Guns and Roses with Axl Rose, created the unforgettable sound of L.A. Guns.  (*Id.* ¶ 22).

Defendant Stephen Riley ("Riley") took no part in forming or naming the band. It was not until six years after Guns formed L.A. Guns that Riley performed on one of the band's albums.  (*Id.* ¶ 27).

In October, 1999, purporting to "help" Plaintiff Tracii Guns protect the name of the band bearing Plaintiff Tracii Guns's own name, Defendant Riley registered a federal trademark for a design mark incorporating the words "L.A. Guns", U.S. Reg. Number 2,287,358 ("the '358 Registration") and represented to the Trademark Office that a fictitious entity which never existed was the owner of the trademark. (*Id.*¶¶ 36-40).  Though Plaintiff Tracii Guns created the L.A. GUNS mark, was the first to use the mark on the asserted goods and services, to this day continues to be the owner of all such common law trademark rights, and Defendant Riley was not even in the band when Plaintiff Tracii Guns created and first began use of the mark, Defendant Riley registered the mark with the non-existent "Stephen Riley and Traci [sic] Guns Partnership" as the listed owners of the mark. (*Id.*).  Indeed, in submitting the application, Riley submitted a declaration, under penalty of perjury, which contained knowingly false representations regarding the creation and ownership of the mark, including the date of the mark's first use in commerce and, most importantly, the assertion that Riley was a co-owner of the Mark.  (*Id.* ¶¶ 37–39).

But Guns never agreed to share ownership of his mark with Riley.  (*Id.* ¶ 40). Riley's registration was fraudulent and is, therefore, invalid.

In the meantime, the band, which now included Guns, Riley, and the now famous, signature lead singer, Plaintiff Philip Lewis ("Lewis"), had become a success, scoring a number of *Billboard* charted hits.  (*Id.* ¶¶ 25–28).  To pitch in with administration tasks, Riley (through and with his entity, Defendant Hardcore, Inc.) agreed to help manage the band's royalty payments.  (*Id.* ¶¶ 35, 74).  As it turns out, what appeared to be an act of teamwork instead appears to have been a ruse to allow Riley to keep the royalties to himself.  On information and belief, Riley has received well over $200,000 in royalties through this scheme, but has transferred none to Plaintiffs (or any other songwriters and performers to whom those royalties belong).  (*Id.* ¶¶ 77–79).

Shortly after Guns took a brief hiatus from L.A. Guns to work on other projects, he discovered Riley's conversion of the band's royalties.  (*Id.* ¶ 47).  And though Guns revoked Riley's license to use the L.A. Guns mark, Riley continued to use the mark.  (*Id.* ¶¶ 48–49).  During the time that Guns paused the band's live performances, the mark continued to be used with respect to goods and services other than live performances, inuring to the benefit of Guns, and Guns always intended to use the mark going forward in connection with live performances and the other related goods and services.  (*Id.* ¶ 51).

The recent public confusion is problematic. When the public now goes to see L.A. Guns, or *thinks* they are going to see L.A. Guns, they go to see the band containing its namesake, Plaintiff Tracii Guns, the founder of the band and world-renowned guitar player.  (*Id.* ¶ 73).  And they go to hear the signature voice of Plaintiff Philip Lewis, who recorded the lead vocals on nearly every L.A. Guns album.  (*Id.*)  They do not go to hear Defendant Riley, a drummer who, though admittedly played on a number of L.A. Guns albums, is neither the face nor the sound of L.A. Guns.  (*Id.*).

But this is not always what the public gets.  Plaintiffs allege that recently, booking agents frequently do not understand which band is appearing, and fans buy

tickets expecting to see the *real* L.A. Guns, but instead see the former drummer and his friends. (*See id.* ¶ 57–59).

Defendants have recently announced a new tour and intend to perform new shows, record new albums, sell new merchandise, and advertise using the L.A. Guns mark. (*See, e.g.*, *id.* ¶¶ 58–59, 63-69, 82–86). And while previous infringing activity occurred at a slow drip, in the last year, Defendants have opened the floodgates. (*See, e.g.*, *id.*). Guns had no choice but to file this action.

## III.   DISMISSAL IS NOT APPROPRIATE AS TO THE FACTUALLY INTENSIVE DEFENSE OF LACHES, WHICH IS NOT APPLICABLE TO PLAINTIFFS' CLAIMS

Defendants cannot prevail on laches, let alone at the pleadings stage. The defense is factually intensive and cannot be decided on a motion to dismiss. Laches cannot be asserted by a willful infringer, like Defendants. And the equitable defense does not apply to claims at law. Plaintiffs' Amended Complaint pleads facts sufficient to show a reasonable delay and no evidence of prejudice which is overcomes this defense at the pleading stage.

### A.   It Is Not Appropriate To Make Factual Determinations As To A Laches Defense On A Motion To Dismiss

Whether the affirmative defense of laches applies to bar Plaintiffs' claims cannot be decided on a motion to dismiss: "[T]he Ninth Circuit has made clear that given the factual nature of the application of laches, this defense is rarely appropriate even on a motion for summary judgment, much less a motion to dismiss." *Tortilla Factory, LLC v. Better Booch, LLC*, No. 2:18-CV-02980-CAS-SKx, 2018 WL 6179491, at *4 (C.D. Cal. Nov. 26, 2018) (citing *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1083 (9th Cir. 2000)).

The defense often raises factual questions too significant for even the lower hurdle (for a party asserting the defense) of a motion for summary judgment. *Couveau*, 218 F.3d 1078 at 1083 ("Because the application of laches depends on a

655 North Central Avenue, Suite 2300
Glendale, CA 91203

Lewis Roca
ROTHGERBER CHRISTIE

close evaluation of all the particular facts in a case, it is seldom susceptible of resolution by summary judgment."); *Speed Corp. v. Webster*, 262 F.2d 482, 484 (9th Cir. 1959) (holding that "[a] claim of laches raises a question of fact"); *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, No. 14-CV-2061-H (BGS), 2016 WL 7326609, at *11 (S.D. Cal. Jan. 12, 2016), *aff'd*, 875 F.3d 1369 (Fed. Cir. 2017) ("Whether the defendant has established the required elements of its laches defense is a question of fact.").

And if resolution of a laches defense is rarely appropriate on a motion for summary judgment, as is the case, then it is almost never appropriate on a motion to dismiss. *Tortilla Factory, LLC*, 2018 WL 6179491, at *4 (citing *Couveau*, 218 F.3d at 1083); *Paiute-Shoshone Indians of Bishop Cmty. of Bishop Colony, Cal. v. City of Los Angeles*, No. 1:06CV00736 OWWLJO, 2007 WL 521403, at *11 (E.D. Cal. Feb. 15, 2007), *aff'd sub nom.*, 637 F.3d 993 (9th Cir. 2011) (holding that "the issue of laches raises significant questions of fact that cannot be resolved on a motion to dismiss"); *McBride v. Pentagon Techs. Grp., Inc.*, No. C 15-2696 SBA, 2015 WL 9304044, at *4 (N.D. Cal. Dec. 22, 2015) ("The Court is unpersuaded that Defendants' laches defense can be adjudicated based on pleadings.").

The defense of laches involves a fact-intensive analysis. This task is not typically appropriate for a motion for summary judgment. And it is even less appropriate on a motion to dismiss. The Motion should be dismissed.

## B. Plaintiff Has Alleged Facts Sufficient to Defeat a 12(b)(6) Motion As To Laches

To survive a motion to dismiss, a complaint need only plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Even assuming a laches defense could be appropriately decided on a motion to dismiss, the defense fails at this stage so long as the plaintiff pleaded facts sufficient to refute <u>at least one</u> element of the defense, which includes: "(1) the plaintiff unreasonably delayed in

filing suit, and (2) the defendant suffered prejudice as a result." *Grasshopper House, LLC v. Clean & Sober Media LLC*, 394 F. Supp. 3d 1073, 1091 (C.D. Cal. 2019) (citation omitted).

The Amended Complaint does not establish unreasonable delay in bringing the trademark claims.[1] A party asserting trademark infringement has no obligation to sue until there is a case of clear infringement.

> Laches is not measured from defendant's first unpermitted use of the contested mark. Laches is measured from the date when there was an infringing use sufficient to require legal protest and possible lawsuit. In most cases, this requires legal action only when defendant's infringing acts significantly impact on plaintiff's good will and business reputation.

6 McCarthy on Trademarks and Unfair Competition § 31:19 (5th ed.).

Plaintiffs allege that Defendants' *recent* activities are causing actual confusion in the relevant public and harm to Guns' good will, and that as of November 2019, Defendants are now planning a new substantial tour, new album, and other expanded infringing use that is likely to cause additional confusion in the marketplace. (Am. Compl. ¶¶ 55-60 and 63-70). This new infringing conduct has *exploded* in severity and impact in recent months and includes newly infringing conduct by many of the other defendants who previously had not engaged in infringing conduct for which laches could even apply (e.g., Kelly Nickels, Kurt Frohlich, Eric Baker, Daniel Sullivan Bigg, Hardcore, Inc., Epic Rights, LLC, New Breed LLC, Bigg Time Entertainment, Inc., and Golden Robot Global Entertainment Pty Ltd). These factual allegations, if accepted as true, establish reasonable delay and defeat any laches claim.

---

[1] Plaintiffs did not delay at all in bringing their other claims. But because the equitable defense of laches is not an available defense for those claims at law, Plaintiffs address them separately, below. *See infra*, Part III.D.

As to the second prong, there are no allegations in the Amended Complaint to establish that any Defendant was prejudiced, let alone substantially prejudiced, by any purported delay.  Indeed, Plaintiffs' Amended Complaint expressly refutes this element of the laches defense, stating that "on information and belief, Defendants have suffered no harm or prejudice as a result of the timing of the filing of this lawsuit."  (Compl. ¶ 70, ECF No. 27).  Nevertheless, the question of prejudice remains a disputed factual issue for which discovery is necessary.[2]

Moreover, not only must the Court "accept all factual allegations of the complaint as true," but it must also "draw all reasonable inferences in favor of the nonmoving party."  *Bernhardt v. Cty. of Los Angeles*, 279 F.3d 862, 867 (9th Cir. 2002) (quoting *Western Ctr. for Journalism v. Cederquist*, 235 F.3d 1153, 1154 (9th Cir. 2000)).  Here, it is reasonable to infer that any delay by Plaintiffs in bringing this suit was reasonable and that Defendants suffered no prejudice as a result.  Simply put, it is far too early to decide as a substantive matter, whether Plaintiffs' claims are barred by laches.

## C.    A Laches Defense Is Not Available for a Willful Infringer

Even if laches could be decided on a motion to dismiss, and the elements could be conclusively established from Plaintiffs' Amended Complaint (neither of which is the case), the defense would not be available to Defendants, who are willful infringers.  "The doctrine of laches does not apply in cases of willful infringement."  *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1228 (9th Cir. 2012)

---

[2]  And Defendants offer nothing but conclusory assertions of prejudice.  Should they use their reply brief to offer actual facts, such facts must be rejected, as this would deprive Plaintiffs of their right to address those facts and the corresponding arguments.  *See TeleSign Corp. v. Twilio, Inc.*, No. CV 15-3240 PSG (SSX), 2015 WL 12662344, at *1 (C.D. Cal. Oct. 9, 2015) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers.").  In any event, those facts would also be outside of the four corners of Plaintiffs' Amended Complaint and, therefore, cannot be considered on a Motion for Summary Judgment.

Lewis Roca
ROTHGERBER CHRISTIE

655 North Central Avenue, Suite 2300
Glendale, CA 91203

(citation omitted).   Willful infringement occurs when the infringing activity is "willfully calculated to exploit the advantage of an established mark." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1405 (9th Cir. 1993), *abrogated on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016); *accord DC Comics v. Towle*, 802 F.3d 1012, 1026 (9th Cir. 2015) ("[T]he issue with respect to the availability of a laches defense in a trademark infringement case is whether the defendant 'intended to derive benefit from and capitalize on [the plaintiff's] goodwill' by using the mark" (alteration in original) (quoting *Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 151 n. 2 (5th Cir.1985))).

Plaintiffs have alleged that "Defendants' infringement is . . . willful." (Am. Compl.  ¶ 69, ECF No. 27).   Indeed, implications of Defendants' willful infringement pervade the Amended Complaint.  (*See, e.g.*, *id.* ¶ 37 ("In support of the trademark application Defendant Riley submitted a declaration, under penalty of perjury, which contained knowingly false representations regarding the creation and ownership of the mark."); *id.* ¶ 40 ("Plaintiff Tracii Guns never agreed to allow Defendant Riley to share ownership of the mark."); *id.* ¶ 48 ("[U]pon discovering Defendant Riley's wrongful confiscation of the royalties, Plaintiff Tracii Guns revoked Defendant Riley's license to use any L.A. Guns mark."); *id.* ¶ 49 ("[W]ithout the consent of Plaintiff Tracii Guns, Defendant Riley . . . continued touring and producing records under the L.A. Guns name . . . ."); *id.* ¶ 58 ("Riley created and manages a Facebook page . . . purporting to be the 'official' Facebook page for the band."); *id.* ¶ 63 ("In November, 2019, the Infringing L.A. Guns announced it will be recording a new album and beginning a new tour."); *id.* ¶ 84 ("Defendant Riley falsely represented to Defendant Epic Rights that he was '***the sole and exclusive owner***' of the L.A. Guns mark." (emphasis added)); *id.* ¶ 86 ("L.A. Guns manager, Scotty Ludwick, contacted Defendant Epic Rights and informed Defendant Epic Rights that Defendant Riley did not have the authority to license the L.A. Guns mark . . . [nevertheless] Epic Rights continues to sell unauthorized merchandise

655 North Central Avenue, Suite 2300
Glendale, CA 91203

Lewis Roca
ROTHGERBER CHRISTIE

containing the L.A. Guns mark."). These assertions state plausible facts supporting Plaintiffs' claims of willful infringement.

For these same reasons, Defendants come to this action with unclean hands and, therefore, cannot assert the equitable defense of laches. *See Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 841 (9th Cir. 2002) ("A party with unclean hands may not assert laches.").

Thus, Plaintiffs have sufficiently alleged facts sufficient to bar any application of laches at this stage in the litigation.

**D.    The Affirmative Defense of Laches Does Not Apply to Several of Plaintiffs' Claims**

*1.    The Equitable Defense of Laches Is Not Applicable to Plaintiffs' Claims at Law*

"Both before and after the merger of law and equity in 1938, this Court has cautioned against invoking laches to bar legal relief." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 678 (2014). Since that merger, it has become a well-established principle of law that "laches is an equitable defense unavailable in actions at law governed by a statute of limitations." *UA Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1474 n.3 (9th Cir. 1994).[3]

Plaintiffs' Third through Eighth causes of action all assert claims at law and have their own corresponding statutes of limitations.[4] Thus, the defense of laches is not available for these claims.

---

[3] Plaintiffs concede that when it comes to the Lanham Act, federal courts have recognized an exception to the general rule that the laches defense is not available for claims at law. *See Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*, 894 F.3d 1015, 1024 (9th Cir. 2018). Plaintiffs know of no such exception for any of their other claims.

[4] *See* Am. Compl. at Counts IV and V, California statutory and common law unfair competition.; Cal. Civ. Code § 17208; *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1195, 292 P.3d 871, 878 (2013); Count VI, California statutory and common law unauthorized use of likeness. Cal. Civ. Code § 3426.6; Count VII, California

### 2.     Plaintiffs   Have   Not   Delayed   in   Seeking   Relief, as They Allege Recent Events Giving Rise to Their Claims

Finally, the application of any rule that could act to time-bar these causes of action fails, because Plaintiffs have alleged recent conduct giving rise to the claims. It should go without saying that there is no "unreasonabl[e] delay[] in filing suit," necessary to sustain a laches defense, if there was no appreciable delay in bringing the action. *Grasshopper House, LLC*, 394 F. Supp. 3d at 1091. Moreover, under the continuous accrual doctrine, the applicable time-barring rule is "renew[ed]" for each successive wrongful act. *Underwood v. Future Income Payments, LLC*, No. SA CV 17-1570 DOC (DFMx), 2018 WL 4964333, at *10 (C.D. Cal. Apr. 26, 2018) (holding that "when the wrong is continual and the plaintiff is repeatedly injured, courts apply the continuous accrual rule."

Here, Plaintiffs have alleged both recent and continuing conduct, wherein no delay sufficient to establish the defense of laches exists:

1.     Defendants' infringing acts continue to this day, (Counts I–V). For example, all defendants are currently working to produce a new album and merchandise using the L.A. Guns mark. (Compl. ¶¶ 63–69, 83–86).

2.     Defendants continue to use, and to allow to be used, Plaintiffs' likeness, without authorization, to promote the infringing band, Count VI). (Compl. ¶¶ 58-59).

3.     Defendants Riley and Hardcore, Inc. continue to receive royalties on behalf of Plaintiffs, but unlawfully refuse to transfer those funds to Plaintiffs, i.e., the lawful owners, (Counts VII and VII). (*Id.* ¶ 82).

The defense of laches is not viable on these claims, especially on a Motion to Dismiss.[5] The Motion should be denied.

---

common law breach of contract. Cal. Civ. Proc. Code § 337; Count VIII, Conversion. Cal. Civ. Proc. Code § 338.

[5] Though Defendants do not seek dismissal on the basis that any claim is statutorily time-barred, their Motion contains an incorrect assertion of law on that issue, which

655 North Central Avenue, Suite 2300
Glendale, CA 91203

Lewis Roca
ROTHGERBER CHRISTIE

**IV.  THE COURT MUST ONLY CONSIDER EVIDENCE APPROPRIATE TO A MOTION TO DISMISS, BECAUSE DEFENDANTS HAVE NOT MET THE REQUIREMENTS TO CONVERT TO A MOTION FOR SUMMARY JUDGMENT**

While a court may, at its discretion, convert a motion to dismiss into one for summary judgment so as to look at evidence beyond the pleadings, it may only do so when the moving party meets the procedural requirements for a motion for summary judgment under FRCP 56 and this Court's LR 56-1.  Here, Defendants did not submit a "Statement of Uncontroverted Facts and Conclusions of Law" or a proposed judgment as the Local Rule requires.  Thus, the Court cannot look beyond evidence that would be appropriate for a motion to dismiss.  Defendants' numerous factual assertions, which are taken neither from Plaintiffs' Complaint nor subject to judicial notice, must be discarded in resolving Defendants' motion.

**A.  To Convert a Motion to Dismiss to a Motion for Summary Judgment, the Moving Party Must Have Complied with the Central District's Procedural Requirements for a Motion for Summary Judgment**

A plaintiff survives a motion to dismiss so long as the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

---

Plaintiffs cannot allow to stand.  Defendants claim that, "[w]ith certain exceptions not applicable in this case, after a mark has been registered and in use for five years, it becomes incontestable."  (Mot. at 16 11–13).  Contrary to Plaintiffs' argument, those exceptions *are* applicable here.  A petition to cancel a registration can be filed "*[a]t any time* if . . . its registration was obtained fraudulently."  15 U.S.C. § 1064(3) (emphasis added).  A central assertion of Plaintiffs' Amended Complaint is that Riley procured the registration by fraud.  (*See, e.g.*, Am. Compl. ¶ 93 (alleging that "[t]he '358 Registration is separately invalid based on fraud on the . . . USPTO . . . [because] [t]he declaration, made under penalty of perjury by Defendant Riley, contained knowingly false representations.")).  Similarly, a registration is subject to cancellation at any time if the purported owner does not in fact own those rights.

655 North Central Avenue, Suite 2300
Glendale, CA  91203

Lewis Roca
ROTHGERBER CHRISTIE

on its face.'"  *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 570).  "A motion under Rule 12(b)(6) should be granted only if 'it appears beyond doubt that the plaintiff can prove ***no set of facts*** in support of his claim which would entitle him to relief,' construing the complaint in the light most favorable to the plaintiff."  *Bain v. California Teachers Ass'n*, 891 F.3d 1206, 1211 (9th Cir. 2018) (emphasis added) (citing *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1061 (9th Cir. 2004)) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)).

Generally when deciding a Rule 12(b)(6) motion, the Court "looks only to the face of the complaint and documents attached thereto."  *Gonzales v. Marriott Int'l, Inc.*, 142 F. Supp. 3d 961, 968 (C.D. Cal. 2015).  But "if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment."  *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).

Though the Court has the option of converting the motion to one for summary judgment so as to consider evidence outside the pleadings, it can only do so if the motion complies with the procedural requirements of a motion for summary judgment:

> "In order to be treated as a motion for summary judgment, the motion must comply with the substantive and procedural requirements of Rule 56, as well as the Local Rules of this Court . . . [including] fil[ing] a Statement of Uncontroverted Facts and Conclusions of Law or a proposed judgment, as required by Local Rule 56-1 . . . ."

*Sowa v. Abberley*, No. CV 12-2579 PSG (MANx), 2012 WL 12887754, at *1 (C.D. Cal. Nov. 20, 2012); *accord Biolase, Inc. v. Fotona Proizvodnja Optoelektronskih Naprav D. D.*, No. SACV 14-0248 AG (ANx), 2014 WL 12577156, at *2 (C.D. Cal. Dec. 1, 2014) ("[T]o convert this Motion would improperly avoid Local Rules 56-1 and 56-2. Thus the Court declines to convert this Motion to a motion for summary

655 North Central Avenue, Suite 2300
Glendale, CA 91203

Lewis Roca
ROTHGERBER CHRISTIE

judgment, and declines to consider the evidence offered by Biolase in support of the Motion."); *Forest Ambulatory Surgical Assocs., L.P. v. United Healthcare Ins. Co.,* No. CV 12-2916 PSG (FFMx), 2013 WL 11323600, at *7 (C.D. Cal. Mar. 12, 2013) ("Defendants have not filed a Statement of Uncontroverted Facts and Conclusions of Law or a proposed judgment, as required by Local Rule 56-1 . . . . As such, the Court does not consider matters outside the pleadings." (citing L.R. 56-1)).

LR 56-1 requires that a party filing a motion for summary judgment concurrently file "Statement of Uncontroverted Facts and Conclusions of Law," and a proposed judgment or proposed order.

**B.   Because the Motion Does Not Comply with LR 56-1, the Motion Cannot Be Converted to One for Summary Judgment; Therefore, the Court Must Reject Defendants' Extraneous Facts**

Here, Defendants have not summited a Statement of Uncontroverted Facts and Conclusions of law.  Nor have they submitted a proposed judgment or order. Defendants should not be permitted to circumvent the procedural requirements of this Court by simply filing a motion to dismiss and including facts outside of the pleadings.  Thus, the Court cannot convert the motion to one for Summary Judgment. And, in turn, it can only consider evidence appropriate to a 12(b)(6) motion, which generally includes only "the face of the complaint and documents attached thereto." *Gonzales*, 142 F. Supp. at 968.

Defendants assert a number of purported facts that neither appear in Plaintiffs' Amended Complaint nor are subject to judicial notice.   While many of these assertions are immaterial to the Motion, some implicate Plaintiffs' claims and are disputed.  The following are just a few examples of improper factual assertions in Defendants' Motion:

1.   Asserting that Riley is "the most consistent member" of L.A. Guns. (Mot. at 8:16).  This is not relevant to the issue of laches, and is a disputed fact.

2.      Asserting that Tracii Guns "eventually left" the band. (*Id.* at 8:21). This is not relevant to laches and is disputed.   As alleged in Plaintiffs' Amended Complaint, Guns did not *leave* the band. (Am. Compl. ¶ 46, ECF No. 27).   Instead, Guns took a "brief hiatus" to work on another project and always intended to continue touring under the L.A. GUNS mark. (*Id.* at ¶¶ 46, 51).

3.      Asserting that "the Tracii Guns-led version of the group disbanded" in 2012. (*Id.* at 9:1–2). This is not relevant to laches and is disputed as explained above.

4.      Asserting that "Riley registered the mark jointly with Guns." (*Id.* at 9-10).   Plaintiffs allege that Guns owns the sole trademark rights, have trademark priority, and that "Tracii Guns never agreed to allow Defendant Riley to share ownership of the mark." (Am. Compl. ¶¶ 39, 40, ECF No. 27).

5.      Asserting that "[t]he two [L.A. Guns] bands coexisted peacefully for years, until only Riley's was active." (*Id.* at 9:17–18).   As explained above, Guns disputes this assertion.

6.      Asserting that Guns "did not use the mark systematically and consistently" and contrarily, that "Riley has." (*Id.* at 13:25–26). This is clearly disputed.   Guns alleges that he "has used the L.A. GUNS mark on the above goods and services continuously since 1983, Plaintiff Guns has invested substantial resources in using and promoting the mark to the public, and the public associates the mark with Plaintiff Guns as to the goods and services listed above" and that "[d]uring the time that Plaintiff Tracii Guns paused the band's live performances, the mark continued to be used with respect to goods and services other than live performances, and Plaintiff Guns intended to continue to use the mark going forward in connection with live performances and the other goods and services identified above." (Am. Compl. ¶¶ 20, 51).

7.      Asserting that Riley's declaration to the USPTO was not knowingly false because "1983 could never accurately be the date of first use." (*Id.* at 14:7–8). This is irrelevant to laches and disputed.   Guns alleges that in "1983,

Plaintiff Tracii Guns formed a rock and roll band. He named it "L.A. Guns." The original band consisted of Plaintiff Tracii Guns (lead guitar), Mike Jagosz (lead singer), Ole Beich (bass guitar), and Rob Gardner (drums)." (Am. Compl., ¶ 18). Riley cannot claim a date of first use of 1983 because Riley did not use (nor does he claim to have used) the mark since then, and at the time that Riley submitted the false declaration to the Trademark Office, Guns already had trademark priority over Riley because Guns started using the mark in 1983.

8.   Asserting (rather perplexingly) that the L.A. Guns band Guns formed in 1983 "was a different band," so it would not constitute the date of first use of the mark in commerce. (Mot. at 14:5–9). This is irrelevant to any issue in the case. Plaintiff Guns started using the L.A. GUNS trademark for live musical performances and other related goods and services in 1983. Guns therefore has trademark priority over later users of that mark, regardless of the members of the band. This argument implies that every change of band member creates an entirely different band. This is irrelevant. Guns continuously used the LA GUNS mark since 1983. Indeed, even Defendants concede that "[a] performing group that disbands does not immediately abandon exclusive rights in its name." (Mot. at 20:4–10 (collecting cases)).

9.   Curiously asserting that Riley somehow "suffered prejudice" by using the mark "to perform and record under the band name, as well as to promote the band through selling or licensing merchandise bearing the mark." (*Id.* at 16:21–24). This is not evidence of prejudice.

10.   Asserting that "[t]he money allegedly converted is not a specific identifiable amount, but a more general, amorphous, unliquidated sum." (Mot. at 18:14–16). Again, this is disputed.

Plaintiffs dispute each of these unsupported factual assertions. Nevertheless, this is not a motion for summary judgment, and as addressed above, it cannot be converted into one. Indeed, Defendants do not support any of these extraneous facts with admissible facts. Thus, they would also not be properly submitted for a motion

for summary judgment.  *See* L.R. 7-6.  Even if they had, these assertions are disputed. Accordingly, the Court should not consider these, or any other, factual assertions in the Motion that are not cited to Plaintiffs' Amended Complaint or properly recognized through judicial notice.

## V.    PLAINTIFFS STATE A VALID CLAIM FOR CONVERSION

### A.    Defendants Had an Obligation, Independent of Contract, to Refrain from Wrongfully Depriving Plaintiffs of Their Property

As Defendants concede, the elements of conversion in California are "(1) the plaintiff's ownership or right to possession of the property, (2) the defendant's conversion by a wrongful act or disposition of property rights, and (3) damages." (Mot. at 17:24–26 (quoting *Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1063, 80 Cal. Rptr. 2d 704 (1998))).  But Defendants go astray when they imply that conduct amounting to a breach of contract cannot give rise to a tort action. (*See* Mot. at 17:27–18:3).

The *correct* statement of law is conduct that amounts to a breach of contract, but that could not constitute a wrongful act independent of a contract, cannot create tort liability.  *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 989, 102 P.3d 268, 273 (2004) ("[C]onduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law. (alteration in original) (quoting *Erlich v. Menezes*, 21 Cal. 4th 543, 551, 981 P.2d 978, 983 (1999))).  In other words, conduct amounting to a breach of contract can simultaneously give rise to a tort claim where "the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm."  *Erlich v. Menezes*, 21 Cal. 4th 543, 552, 981 P.2d 978, 983 (1999).

While Riley did have a contractual obligation to transfer Plaintiffs' royalties to them, his conduct would have still been tortious had no contract existed, i.e., an independent duty.  Plaintiffs alleged that Riley and Hardcore, Inc. "receiv[ed] royalty

- 16 -

payments owed to and belonging to . . . Plaintiffs Tracii Guns [and] Philip Lewis." (Am. Compl. ¶ 74, ECF No. 27). No contract was necessary to establish Riley's obligation to refrain from wrongfully keeping royalty payments owed to Plaintiffs. Defendants' argument fails.

## B. Defendants Converted "a Specific, Identifiable Sum" of Plaintiffs' Money

Defendants correctly state that "[m]oney cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum involved, such as where an agent accepts a sum of money to be paid to another and fails to make the payment." (Mot. at 18:4–7 (alteration in original) (citing *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 395, 58 Cal. Rptr. 3d 516, 524 (2007))). Ironically, the example in Defendants' quoted citation describes the exact situation here.

Riley and Hardcore, Inc. acted as Plaintiffs' agent, accepting royalty payments due to Plaintiffs, yet "fail[ed] to make the payment[s]" to Plaintiffs. *See id.*; *accord In re Sweeney*, 264 B.R. 866, 870 (Bankr. W.D. Ky. 2001) ("Defendant's act of assuming control over the insurance proceeds, which clearly belonged to Plaintiff under the security agreement, amounted to conversion of Plaintiff's property under state law."). This is precisely what Plaintiffs Amended Complaint alleges. (*See, e.g.*, Am. Compl. ¶ 75, ECF No. 27 ("Plaintiffs entrusted Defendants Riley and Hardcore Inc. with Plaintiffs' royalty payments for the specific purpose of transferring those funds to Plaintiffs."); *id.* ¶ 78 ("Neither Defendant Riley nor Defendant Hardcore, Inc. have paid royalties to any musicians who are due payments, including Plaintiffs.")).

Moreover, as Plaintiffs allege, the amount Riley and Hardcore, Inc. converted is a specific and identifiable sum. (*Id.* ¶ 76). It is irrelevant that Plaintiffs do not currently know the amount the Defendants have converted. All that is required is that "a specific sum capable of identification is involved." *Kim v. Westmoore*

- 17 -

*Partners, Inc.*, 201 Cal. App. 4th 267, 284, 133 Cal. Rptr. 3d 774, 789 (2011) (quoting *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal. App. 4th 472, 485, 56 Cal. Rptr. 2d 756, 764 (1996)).  To conclude otherwise would lead to bizarre results.  That is, if Defendants' argument were law, a person who had their wallet stolen at gunpoint, but did not know how much money was in the wallet, would not be able to state a claim for conversion.  That is absurd.

In this case, discovery can easily identify specific sums of money that Riley received from the various publishers and other entities.  And contracts and various laws describe the amounts that belong to Plaintiffs.  Riley cannot be permitted to escape liability for his tortious conversion simply because he controls the information showing how much money he converted.

Because Plaintiffs have stated a claim for conversion, the Motion should be denied.[6]

## VI.    THE COURT MAY CONTINUE TO EXERCISE SUBJECT MATTER JURISDICTION OVER THIS ACTION

Defendants' final argument relies on several unestablished assumptions. First, Defendants' claim that the Court lacks subject matter jurisdiction, because Plaintiffs only viable claim is a state law claim for accounting (which Plaintiffs have not even pleaded).  (Mot. at 20).  Of course, this relies on the assumption that the Court will dismiss all of Plaintiffs' federal claims.  As demonstrated throughout this Opposition, dismissal of any of Plaintiffs' claims is unwarranted.

Second, Defendants have no basis to assert that "parties are co-owners of [the] mark."  (*Id.* at 18:26).  Guns clearly alleges prior use of LA GUNS going back to

---

[6]  Defendants express confusion at "why Philip Lewis is a Plaintiff."  (Mot. at 10:5). As the Amended Complaint makes clear, Lewis is a part of the claims related to the conversion of his royalties by Riley and Hardcore, Inc., (Am. Compl. at Count VII-VIII), as well as the claim for Unauthorized Use of Likeness, (*id.* at Count VI). Lewis is not a party to the trademark claims.

655 North Central Avenue, Suite 2300
Glendale, CA 91203

Lewis Roca
ROTHGERBER CHRISTIE

1983 (Am Compl. ¶ 18), that "Tracii Guns is the owner of the common law trademark," (*id.* ¶ 19), that "Tracii Guns never agreed to allow Defendant Riley to share ownership of the mark," (*id.* ¶ 40), and that "[t]he 'Stephen Riley and Traci [sic] Guns Partnership' [i.e., the fraudulently registered owner of the mark] does not exist," *id.* ¶ 41.  This is the heart of the dispute.  Plaintiffs do not allege any purported "co-ownership" of any such mark.  Defendants' claim therefore fails.

In any event, Plaintiffs' argument raises intensive questions of fact, and extends far beyond the four corners of the Amended Complaint.  As such, the question cannot be resolved on a Motion to dismiss.  The Court has subject matter jurisdiction over Plaintiffs' claims, submitted pursuant to the Lanham Act.

## VII.   **CONCLUSION**

Defendants cannot prevail on a laches defense at this stage of the proceedings (or likely any other stage).  And Plaintiffs have alleged facts sufficient to state a claim for conversion.  Because the Amended Complaint contains sufficient factual matter, when accepted as true, to state a claim to relief that is plausible on its face as to each and every claim asserted, the Motion must be denied.

Dated:  April 6, 2020                    LEWIS ROCA ROTHGERBER
                                         CHRISTIE LLP

                                         By  /s/Erik J. Foley
                                         Erik J. Foley

                                         *Attorneys for Plaintiffs*
                                         *Tracii Guns and Philip Lewis*

110910310.3

- 19 -