

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

TRACII GUNS and PHILIP LEWIS,

        Plaintiffs,

      v.

STEPHEN RILEY; SCOTT GRIFFIN; KELLY NICKELS; KURT FROHLICH; ERIC BAKER; DANIEL SULLIVAN BIGG; HARDCORE, INC. d/b/a RIVERTON ONE MUSIC; EPIC RIGHTS, LLC; NEW BREED LLC; BIGG TIME ENTERTAINMENT, INC.; GOLDEN ROBOT GLOBAL ENTERTAINMENT PTY LTD; STEPHEN RILEY AND TRACI [sic] GUNS PARTNERSHIP; and DOES 1 through 10, inclusive,

        Defendants.

Case No.: CV 20-00270-CJC (AFMx)

**ORDER DENYING IN SUBSTANTIAL PART DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT (Dkt. 33)**

## I.  INTRODUCTION

In this case, Plaintiffs Tracii Guns ("Tracii") and Philip Lewis assert claims related to the trademark "L.A. GUNS."  (Dkt. 27 [First Amended Complaint, hereinafter "FAC"].)  In short, Tracii has been using the name since 1983, when he formed a band of the same name.  But disputes between band members and other issues over the years eventually led to two different bands making records and touring under this name.  Before the Court is a motion to dismiss filed by Defendants, who are members of the allegedly infringing band and companies that work with those individuals to make their music and promote their shows.  (Dkt. 33 [hereinafter "Mot."].)  For the following reasons, the motion is **DENIED IN SUBSTANTIAL PART**.[1]

## II. BACKGROUND

The following allegations are taken from the FAC, so the Court presumes they are true for purposes of this motion.  In 1983, Tracii formed a rock and roll band that he named "L.A. Guns."  (FAC ¶ 18.)  In 1984, the band recorded their debut extended play record, titled *Collector's Edition No. 1*, which was released in 1985.  (*Id.* ¶ 21.)  After a brief stint in the band Guns N' Roses in 1985, Tracii re-formed L.A. Guns with all new band members, including Plaintiff Lewis as lead singer.  (*Id.* ¶¶ 22–24.)  Between 1987 and 2002, L.A. Guns recorded and released eight full-length albums.  The first of those albums, self-titled *L.A. Guns*, was released in 1987 and recorded primarily by Plaintiffs Tracii and Lewis and Defendant Kelly Nickels.  (*Id.* ¶ 25.)  Defendant Stephen Riley contributed to one track as drummer.  (*Id.*)  Tracii, Lewis, and Riley recorded the next albums, *Cocked and Loaded* in 1989 and *Hollywood Vampires* in 1991.  (*Id.* ¶¶ 27–28.)

---

[1]  Having read and considered the papers presented by the parties, the Court finds these matters appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for April 27, 2020 at 1:30 p.m. is hereby vacated and off calendar.

In 1992, however, L.A. Guns fired Riley from the band for assaulting Lewis, so Tracii, Lewis, and Nickels recorded the band's next album, *Vicious Circle*. (*Id.* ¶¶ 29–30.) Lewis left the band shortly after the 1995 release of *Vicious Circle*. (*Id.* ¶ 31.) In 1996, Riley rejoined the band. (*Id.* ¶ 32.) Tracii and Riley made the next two albums—*American Hardcore* in 1996 and *Shrinking Violet* in 1999—without Lewis. (*Id.*)

In October 1999, Riley registered a federal trademark for a design mark incorporating the words "L.A. Guns." (*Id.* ¶ 36.) In the application, Riley listed the owner of the L.A. Guns mark as "Stephen Riley and Traci [sic] Guns Partnership," with Riley as a 49% owner and Tracii as a 51% owner, even though Riley knew that such a partnership did not exist and Tracii had never agreed to share ownership of the mark with him. (*Id.* ¶¶ 36–38, 40–45.) He also declared that the "[d]ate of the first use of the mark in commerce" was 1987, the year that he joined the band. (*Id.* ¶ 39.) But that was not true—Tracii formed the band in 1983 and released *Collector's Edition No. 1* in 1985. (*Id.*) The FAC does not make clear when Tracii discovered that Riley registered the L.A. Guns mark.

Lewis then re-joined the band, and Tracii, Lewis, and Riley recorded the band's next two albums—*Man in the Moon* in 2001 and *Waking the Dead* in 2002. (*Id.* ¶ 33.) In late 2002, Tracii decided that L.A. Guns would take a break from performing and recording so that he could work on a different project. (*Id.* ¶ 46.) Accordingly, the band cancelled a tour. (*Id.*) However, Tracii agreed to allow Riley to continue to perform using the L.A. Guns mark for two years, at which point Tracii would return to the band. (*Id.* ¶ 47.) Shortly after he made this agreement, though, Tracii discovered that Riley and his company Hardcore, Inc. had wrongly received royalties on the L.A. Guns mark that were rightfully due to Tracii and others, so Tracii revoked Riley's license to use the L.A. Guns mark. (*Id.* ¶¶ 47–48.) Nevertheless, Riley toured and produced records without Tracii and using the L.A. Guns name, including *Tales from the Strip* in 2005 and

*Hollywood Forever* in 2012.  (*Id.* ¶ 50.)  The Complaint calls this band "the unauthorized version of L.A. Guns" or "the Infringing L.A. Guns."  (*Id.* ¶¶ 49–51.)  The current members of the Infringing L.A. Guns are Defendants Stephen Riley, Scott Griffin, Kelly Nickels, and Kurt Frohlich.  (*Id.* ¶ 61.)

Around 2006, Tracii reformed the L.A. Guns and began touring.  Since then, two bands have been touring as the L.A. Guns—Tracii's band ("the Real L.A. Guns") and Riley's band (the Infringing L.A. Guns).  (*Id.* ¶¶ 51–52.)  In 2017, the Real L.A. Guns, including both Tracii and Lewis, released a new album titled *The Missing Peace*, and in March 2019, they released *The Devil You Know*.  (*Id.* ¶¶ 53–54.)  Since reuniting, the Real L.A. Guns has played 230 shows in 17 countries, with about 175 of those shows in the United States, while the Infringing L.A. Guns has played only a few shows in the United States.  (*Id.* ¶¶ 55–56.)  Even though the Infringing L.A. Guns has played fewer shows, the Real L.A. Guns' manager has encountered confusion while booking the band for live performances, with venues asking whether they are "the *real* L.A. Guns or those *other* guys."  (*Id.* ¶ 57.)  In one instance, the Infringing L.A. Guns performed a show at Sunset Station Hotel & Casino ("Sunset Station") in Henderson, Nevada on July 27, 2019, but promotional materials for the show included images of Tracii and Lewis.  (*Id.* ¶ 59.)  At least one patron realized that the Infringing L.A. Guns would be playing, and not the Real L.A. Guns, and sought a refund from the venue.  (*Id.*)

In November 2019, the Infringing L.A. Guns announced that it will be recording a new album and beginning a new tour.  (*Id.* ¶ 63.)  Defendants include the booking agents and managers promoting this tour, the company that will record and produce the forthcoming album, and a company to which Riley licensed the rights to sell L.A. Guns merchandise.  (*Id.* ¶¶ 63–66, 83.)  Through his counsel, Tracii sent cease and desist letters to the Defendants, telling them that their use of the L.A. Guns mark is infringing.  (*Id.*

¶ 68.)  Defendants' counsel responded that Defendants intended to continue using the mark without Tracii's authorization.  (*Id.* ¶ 69.)

This case primarily concerns the L.A. Guns trademark.  In 1996, the year Riley rejoined the band after being fired for the assault on Lewis, Riley incorporated Defendant Hardcore, Inc., and assigned Riverton One Music (a fictitious firm name for Hardcore) the right to collect royalties for L.A. Guns albums and performances, and the obligation to disperse those royalties to band members.  (*Id.* ¶ 35.)  The FAC does not make clear when Tracii discovered that Hardcore and Riverton One Music had the right to collect royalties.  But at some point, Tracii entered into an agreement with Hardcore under which Hardcore would receive and distribute royalty payments to Tracii, Lewis, and other L.A. Guns band members.  (*Id.* ¶ 74.)  However, Hardcore has never paid royalties to any musicians or songwriters who are due payments.  (*Id.* ¶¶ 78–79.)

On January 9, 2020, Plaintiffs filed this case.  (Dkt. 1.)  The FAC asserts claims for: (1) declaratory judgment that the existing registered L.A. Guns trademark is invalid and must be canceled, (2) unfair competition and trademark infringement under the Lanham Act, (3) false advertising under the Lanham Act, (4) unfair competition under California Business and Professions Code § 17200, (5) California common law unfair competition, (6) unauthorized use of likeness under California Civil Code § 3344 and California common law, (7) breach of contract, and (8) conversion.

## III.   LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a plaintiff's claims.  The issue on a motion to dismiss for failure to state a claim is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims asserted.  *Gilligan v. Jamco Dev. Corp.*,

108 F.3d 246, 249 (9th Cir. 1997).  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

To survive a motion to dismiss, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.  *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012).

## IV.   ANALYSIS

Defendants argue that the Court should dismiss Plaintiffs' entire complaint because the doctrine of laches applies.  (Mot. at 13–17.)  In the alternative, Defendants argue that the Court should at least dismiss Plaintiffs' conversion claim because Plaintiffs have only a contractual right of payment of the royalties.  (*Id.* at 17–18.)  The Court addresses each argument in turn.

### A.   Laches

"Laches is an equitable time limitation on a party's right to bring suit, resting on the maxim that one who seeks the help of a court of equity must not sleep on his rights."  *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002) (internal citations omitted).  This affirmative defense bars trademark claims where "the trademark holder knowingly allowed the infringing mark to be used without objection for a lengthy period of time."  *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1209 (9th Cir. 2000) (citation omitted).  To establish that laches bars a claim, a defendant must "prove both an

1  unreasonable delay by the plaintiff and prejudice to itself." *Evergreen Safety Council v.*

2  *RSA Network Inc.*, 697 F.3d 1221, 1226 (9th Cir. 2012) (quotation omitted).

3

4       Laches defenses are highly fact-dependent and rarely resolvable at the motion to

5  dismiss stage.  *See Kourtis v. Cameron*, 419 F.3d 989, 1000 (9th Cir. 2005), *abrogated on*

6  *other grounds by Taylor v. Sturgell*, 553 U.S. 880 (2008); *see also Couveau v. Am.*

7  *Airlines, Inc.*, 218 F.3d 1078, 1083 (9th Cir. 2000) ("Because the application

8  of laches depends on a close evaluation of all the particular facts in a case, it is seldom

9  susceptible of resolution by summary judgment.").  As such, a complaint may "only be

10  properly dismissed on [laches grounds] if the complaint itself contain[s] factual

11  allegations demonstrating that Plaintiff definitively filed suit outside of the limitation

12  period, or unreasonably delayed in filing the suit and that Defendant was prejudiced by

13  this delay." *24/7 Customer, Inc. v. 24-7 Intouch*, 2015 WL 1522236, at *4 (N.D. Cal.

14  Mar. 31, 2015).  Defendants acknowledge the high burden of showing that laches applies

15  on a motion to dismiss, but argue that this is a special case where dismissal is appropriate.

16  (Mot. at 14–15.)

17

18       However, Defendants fail to address Plaintiffs' argument that Plaintiffs have

19  sufficiently alleged willful infringement, and "[t]he doctrine of laches does not apply in

20  cases of willful infringement." *Evergreen Safety*, 697 F.3d at 1228; (Dkt. 34 [Plaintiffs'

21  Opposition to Motion to Dismiss] at 7–9).  An infringer acts with willfulness when its

22  actions are "willfully calculated to exploit the advantage of an established mark." *DC*

23  *Comics v. Towle*, 802 F.3d 1012, 1026 (9th Cir. 2015) (internal citation omitted).  Put

24  another way, the doctrine of laches does not apply where the defendant "intended to

25  derive benefit from and capitalize on the plaintiff's goodwill by using the mark." *Id.*

26  (quoting *Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 151 n.2 (5th Cir. 1985))

27  (cleaned up).

28

Here, Plaintiffs allege that Defendants willfully infringed the L.A. Guns mark. (FAC ¶ 69.) In support, Plaintiffs allege the following facts. Riley lied on the application for the trademark, because a "partnership" between Tracii and Riley did not exist, and Tracii never agreed to share ownership of the mark with Riley. (*Id.* ¶¶ 37–39.) In 2002, Tracii revoked Riley's permission to use the L.A. Guns mark. (*Id.* ¶¶ 47–48.) Nevertheless, Riley and the Infringing L.A. Guns continued making records, including one released in 2005 and another in 2012, and touring, including playing a show at Sunset Station. (*Id.* ¶¶ 49–50, 56, 59.) The Infringing L.A. Guns recently announced a new album and a new tour. (*Id.* ¶ 63.) In conjunction with that new album and tour, Riley told Defendant Epic Rights that he was the sole and exclusive owner of the L.A. Guns mark. (*Id.* ¶ 84.) And in response to a 2019 cease and desist letter, Defendants' counsel indicated that Defendants intend to continue using the mark without Tracii's authorization. (*Id.* ¶ 69.)

Accepting these allegations as true, and construing them in the light most favorable to Plaintiffs, as the Court must on a motion to dismiss, *Skilstaf*, 669 F.3d at 1014, Plaintiffs have sufficiently alleged willful infringement. Tellingly, Defendants do not address the doctrine of willful infringement in their reply. At this stage, then, the Court cannot find that the doctrine of laches bars Plaintiffs' complaint. Accordingly, Defendants' motion to dismiss based on laches is **DENIED.**

### B.    Conversion

"Conversion is the wrongful exercise of dominion over the property of another." *Greka Integrated, Inc. v. Lowrey*, 133 Cal. App. 4th 1572, 1581 (2005) (citations and quotations omitted). Its elements are (1) plaintiff's ownership or right to possession of the property at the time of the conversion, (2) defendant's conversion by a wrongful act or disposition of property rights, and (3) damages. *Id.*

Defendants argue that Plaintiffs' contractual right of payment under Tracii's agreement with Hardcore cannot support a claim for conversion.  (Mot. at 17–18; Dkt. 35 [Defendants' Reply] at 11–12.)  The Court agrees.  Plaintiffs' conversion claim is based on the allegations that they entrusted Riley and Hardcore with their royalty payments for the specific purpose of disbursing the payments to them, but Riley and Hardcore "wrongfully accepted and retained all such royalties" and did not pay Plaintiffs any. (FAC ¶¶ 75, 78, 129.)  But "a mere contractual right of payment, without more, does not entitle the obligee to the immediate possession necessary to establish a cause of action for the tort of conversion."  *In re Bailey*, 197 F.3d 997, 1000 (9th Cir. 1999).  Here, Plaintiffs' allegations appear to give rise to a contractual right of payment, not a claim of conversion.  *See, e.g.*, *Gerawan Farming, Inc. v. Rehrig Pac. Co.*, 2012 WL 691758, at *6 (E.D. Cal. Mar. 2, 2012)*, aff'd*, 587 Fed. App'x 654 (Fed. Cir. 2014) (granting motion to dismiss conversion claim because the allegation that a company failed to pay agreed-upon royalties based on sales "gives rise to a debt and a breach of contract, not a claim for conversion").  Defendants' motion to dismiss Plaintiffs' conversion claim is therefore **GRANTED**.

However, the Court cannot find at this stage that granting leave to amend would be futile.  *See Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1144 (9th Cir. 2015).  Plaintiffs may be able to state a claim for conversion with respect to monies Defendants wrongfully obtained outside the scope of the agreement from their unauthorized use of the mark.  *See Mossimo Holdings LLC v. Haralambus*, 2014 WL 6453832, at *4 (C.D. Cal. Nov. 17, 2014).  Accordingly, the claim is **DISMISSED WITH FOURTEEN DAYS LEAVE TO AMEND**.

//
//
//

**V. CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is **DENIED IN SUBSTANTIAL PART.**  Plaintiffs' conversion claim is **DISMISSED WITH FOURTEEN DAYS LEAVE TO AMEND**.

DATED:     April 17, 2020

_____

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE